# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
State Farm Fire & Casualty Co. a/s/o Stephen and Enid Cate

**DEFENDANTS**
PECO Energy Company and Xylem, Inc. f/k/a Sensus

**(b)** County of Residence of First Listed Plaintiff: McClean County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Delaware County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel J. de Luca, Esquire
Three Valley Square, Suite 220, Blue Bell, PA 19422

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [x] 385 Property Damage Product Liability

**PRISONER PETITIONS**
*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332(a)(1)

Brief description of cause:
Property Damage

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 600,000+

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 04/01/2021

SIGNATURE OF ATTORNEY OF RECORD: *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: One State Farm Plaza, Bloomington, IL 61710

Address of Defendant: 2301 Market Street, Philadelphia, PA 19010 and 1 International Drive, Rye Brook, NY 10573

Place of Accident, Incident or Transaction: 23 Buckmanville Road Newtown, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/01/2021     *Attorney-at-Law / Pro Se Plaintiff*     74727
*Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A. Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
     *(Please specify):* Subrogation

**B. Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Daniel J. de Luca, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 04/01/2021     *Attorney-at-Law / Pro Se Plaintiff*     74727
*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO.<br>a/s/o STEPHEN and ENID CATE<br>ONE STATE FARM PLAZA<br>BLOOMINGTON, IL  61710<br>                    Plaintiff,<br><br>     v.<br><br>PECO ENERGY COMPANY<br>2301 MARKET STREET<br>PHILADELPHIA, PA  19010<br>and<br>XYLEM, INC. f/k/a SENSUS<br>1 INTERNATIONAL DRIVE<br>RYE BROOK, NY  10573<br>                    Defendants. | CIVIL ACTION NO.: |

## COMPLAINT

Plaintiff, State Farm Fire & Casualty Co. a/s/o Stephen and Enid Cate ("Plaintiff"), by and through undersigned counsel, hereby demands judgment against Defendants, PECO Energy Company and Xylem, Inc. f/k/a Sensus ("Defendants"), complaining against them as follows:

### PARTIES

1. Plaintiff is a corporation organized and existing under the laws of Illinois; its principal place of business is at the above-captioned address.

2. At all relevant times, Plaintiff was authorized to provide in Pennsylvania the insurance described herein.

3. At all relevant times, Plaintiff provided – via an in-force policy – homeowner insurance to Stephen and Enid Cate ("subrogors") in connection with their residential property at 23 Buckmanville Road in Newtown, Pennsylvania ("subject property").

4. As a result of claims made on said policy in connection with the incident described herein, Plaintiff became subrogated to certain recovery rights and interests of subrogors, i.e. for monies paid thereunder, including the claims giving rise to this action.

5. Defendant PECO Energy Company ("PECO") is a Pennsylvania corporation with its principal place of business at the above-captioned address.

6. At all relevant times, PECO was engaged in, *inter alia*, the business of providing utility goods and services to domestic users.

7. Defendant Xylem, Inc. f/k/a Sensus ("Xylem") is a New York corporation with its principal place of business at the above-captioned address.

8. At all relevant times, Xylem was engaged in, *inter alia*, the business of manufacturing electrical-utility smart meters, such as the smart meter at the subject property described further below ("product").

## JURISDICTION AND VENUE

9. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states; moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

10. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## FACTUAL ALLEGATIONS

11. On and prior to December 8, 2019, PECO was responsible for generating, transmitting, delivering, selling, and/or otherwise providing electricity goods and related services to the subject property.

12. On December 8, 2019, a fire erupted at the subject property; it resulted in extensive

damages thereto, as well as the imposition of additional expenses and harms to subrogors.

13. Investigation into the fire's cause revealed that it was due to from a malfunction of the product that involved electricity that had passed through the product.

14. Thus, as a direct and proximate result of Defendants' negligent acts and omissions, as well as the product's defectiveness (as is described more fully below), subrogors sustained damages and other harms in an amount in excess of $600,000.00.

15. To the extent subrogors' aforementioned policy covered such damages/harms, Plaintiff paid claim monies to them consistent therewith; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

## COUNT I – NEGLIGENCE v. PECO

16. Plaintiff hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein at length.

17. PECO, as a business holding itself out as a competent seller and provider of electricity goods and related services, owed its customers (and others foreseeably affected) a duty of care to properly provide electricity goods and related services, which would not result in damages to persons or property.

18. By and through its employees, agents, contractors, subcontractors, technicians, and/or servants acting within the course and scope of their employment and agency, PECO breached its duty to subrogors when it failed to properly design, install, maintain, operate, monitor, service, and/or replace equipment related to the generation, transmission, distribution, and/or sale of electricity goods and related services to the subject property – in particular, the product.

19. PECO knew or should have known that its failure to properly design, install,

maintain, operate, monitor, service or replace equipment related to the generation, transmission, distribution and/or sale of electricity goods and related service to the subject property, as well as its failure to discover and report defects in the product, would cause damage to subrogors.

20. PECO's negligence and other unlawful actions and/or omissions – by and through its employees, agents, contractors, subcontractors, technicians, and/or servants acting within the course and scope of their employment and agency – consisted of, but was not limited to, the following:

    (a)    failing to properly and adequately design, install, maintain, operate, monitor, service, and/or replace equipment related to the generation, transmission, distribution and/or sale of electricity goods and related services;

    (b)    creating, maintaining and/or permitting the equipment related to the generation, transmission, distribution, and/or of electricity goods and related services to be maintained in a hazardous and/or dangerously defective condition;

    (c)    failing to hire competent and capable personnel to repair or replace PECO's equipment and facilities related to the generation, transmission, distribution and/or sale of electricity goods and related services, giving rise to the damages described;

    (d)    failing to take necessary precautions to protect subrogors by notifying, warning and/or alerting necessary parties of the existence of a dangerous condition in connection with PECO's equipment and facilities related to the generation, transmission, distribution and/or sale of electricity goods and related services; and/or

    (e)    failing to take all reasonable and necessary actions to comply with the provisions of the National Electric Safety Code ("NESC") and the National Electrical Code ("NEC").

21. As a direct and proximate result of PECO's negligent acts and/or omissions,

subrogors sustained and incurred damage to their property, as well as other associated expenses and harms, in an amount in excess of $600,000.00.

22. To the extent subrogors' insurance policy covered such damages/harms, Plaintiff paid claim monies to them consistent therewith; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against PECO – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $600,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

**COUNT II – BREACH OF WARRANTIES v. PECO**

23. Plaintiff incorporates herein by reference the above paragraphs as though the same were fully set forth at length.

24. In furtherance of the aforementioned goods delivered to, and services performed for, subrogors by PECO, PECO warranted that all goods would be safe and non-defective as delivered, and that services would be performed for subrogors in a reasonably workmanlike manner.

25. Based upon the aforementioned negligent and/or non-compliant conduct on the part of PECO as described herein, PECO breached the warranties applicable here vis-à-vis subrogors.

26. As a direct and proximate result of PECO's breaches, subrogors sustained and incurred damages/harms in an amount in excess of $600,000.00.

27. Subrogors have and had performed all conditions precedent to recover based upon

such breaches.

28.  To the extent subrogors' insurance policy covered such damages/harms, Plaintiff paid claim monies to them consistent therewith; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against PECO – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $600,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT III – STRICT LIABILITY v. PECO

29.  Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

30.  PECO is engaged, and at all times relevant hereto was engaged, in the business of providing electrical-utility goods and services to domestic users, specifically through electrical meters and their component parts, such as the one(s) at issue in this case (i.e. the product).

31.  PECO installed, serviced, tested, used, and/or maintained the product and its component parts in a defective condition, unreasonably dangerous to subrogors and their property; PECO also provided defective electricity goods via the product and its component parts when the electricity goods described herein passed through the product and its component parts in a defective condition unreasonably dangerous to subrogors and their property, which caused the malfunction described herein, and ultimately the fire that resulted in subrogors' damages.

32.  PECO knew or should have known that defective electricity goods would, and did, reach subrogors without substantial change in the defective condition that resulted from the malfunction of the meter and its component parts.

33. The aforementioned defects consisted of:

    a. design defects;
    b. manufacturing defects;
    c. component defects;
    d. distribution defects;
    e. use-instructions and/or warnings defects; and/or
    f. a failure to warn of the design, manufacturing, and/or component defects, and/or properly provided warning and/or safe-use instructions.

34. For these reasons, PECO is strictly liable to subrogors under Section 402A of the Restatement (Second) of Torts, and the applicable statutory and case law of the State and Federal Courts of Pennsylvania.

35. As a result of the damages directly and proximately caused by the unreasonably dangerous defects in PECO's electricity goods, subrogors sustained and incurred damages as described herein in an amount in excess of $600,000.00.

36. To the extent subrogors' aforementioned policy covered such damages/harms/expenses, Plaintiff paid claim monies to her consistent therewith; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against PECO – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $600,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT IV – NEGLIGENCE v. XYLEM

37. Plaintiff hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein at length.

38. Xylem, as a business holding itself out as a competent manufacturer of smart

meters, owed a duty of reasonable care to subrogors in regard to, *inter alia*, the design, assembly, testing, inspection, sale, maintenance, and/or installation of the product; Xylem breached said duty.

39. Xylem knew or should have known that its failure to properly design, assemble, test, inspect, sell, maintain and/or install the product would cause damage to subrogors.

40. Xylem's negligence and other unlawful actions and/or omissions – by and through its employees, agents, contractors, subcontractors, technicians, and/or servants acting within the course and scope of their employment and agency – consisted of, but are not limited to, the following:

(a) failing to properly and adequately design, assemble, test, inspect, maintain, sell, and/or install the product;

(b) creating, maintaining and/or permitting the product to be maintained in a hazardous and/or dangerously defective condition;

(c) failing to hire competent and capable personnel to design, assemble, test, inspect, sell, maintain and/or install the product;

(d) failing to property determine that the product was not in a safe condition and free of all material defects so as to keep it from catastrophically failing and/or malfunctioning after reasonable and foreseeable use;

(e) designing, assembling, testing, inspecting, maintaining, selling, and/or installing a dangerously defective product, including its component parts, that Xylem knew or reasonably should have known exposed users to an unreasonable risk of harm because its components could fail, thereby causing a fire;

(f) failing to take necessary precautions to protect subrogors by notifying, warning and/or alerting necessary parties of the existence of a dangerous condition in connection with the product; and/or

(g) failing to take all reasonable and necessary actions to comply with the express provisions of the National Electric Safety Code ("NESC") and the

National Electrical Code ("NEC").

41. As a direct and proximate result of Xylem's negligent acts and/or omissions, subrogors sustained and incurred damage to their property, as well as other associated expenses and harms, in an amount in excess of $600,000.00.

42. To the extent subrogors' aforementioned policy covered such damages/harms, Plaintiff paid claim monies to them consistent therewith; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Xylem – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $600,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT V – BREACH OF WARRANTY v. XYLEM

43. Plaintiff incorporates herein by reference the above paragraphs as though the same were fully set forth at length.

44. At the time of the products' installation, Xylem had reason to know the particular purpose for which the product would be used, and knew that its skill and judgment were being relied upon to furnish a suitable smart meter.

45. Thus, Xylem breached the implied warranty of fitness for a particular purpose in that the product was not fit for the particular purpose for which the product required.

46. In addition, Xylem breached its implied warranty of merchantability in that the product was not fit for the ordinary uses for which it was used.

47. Subrogors' herein-described damages occurred as a direct and proximate result of Xylem's breach of its implied warranties of fitness for a particular purpose and merchantability.

48.     To the extent subrogors' insurance policy covered such damages/harms, Plaintiff paid claim monies to them consistent therewith; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Xylem – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $600,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT VI – STRICT LIABILITY v. XYLEM

49.     Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

50.     Xylem was engaged, in the business of designing, assembling, testing, inspecting, maintaining, selling and/or installing smart meters, and their component parts, and specifically designed, assembled, tested, inspected, maintained, sold and/or installed the product.

51.     Upon information and belief, the product was not modified, changed, altered, or abused by subrogors, or by other users at the subject property, prior to or during its use.

52.     Xylem knew and intended that its smart meters – including the product – would be used by members of the general public, and knew of the specific uses, purposes and requirements to which such meters would be put.

53.     Xylem designed, assembled, tested, inspected, maintained, sold and/or installed the product, including its component parts, in a dangerous and defective condition, which catastrophically failed due to malfunction.

54.     The product was not materially altered in anyway which would affect the dangerous and defective conditions caused and created by Xylem.

55. The aforementioned defects consisted of:

    a. design defects;
    b. manufacturing defects;
    c. component defects;
    d. distribution defects;
    e. use-instructions and/or warnings defects; and/or
    f. a failure to warn of the design, manufacturing, and/or component defects, and/or properly provided warning and/or safe-use instructions.

56. The aforementioned defects or defective conditions existed at the time the product left the possession and/or control of Xylem.

57. As a result of the damages directly and proximately caused by the unreasonably dangerous defects in the product, subrogors sustained and incurred damages as described herein in an amount in excess of $600,000.00.

58. To the extent subrogors' insurance policy covered such damages/harms, Plaintiff paid claim monies to them consistent therewith; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Xylem – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $600,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

                                                             **de LUCA LEVINE LLC**

**BY:** _____
                DANIEL J. de LUCA,
                ATTORNEYS FOR PLAINTIFF
                PA Bar No. 74727
                Attorneys for Plaintiff
                Three Valley Square, Suite 220
                Blue Bell, PA  19422
                Ph: (215) 383-0166
                Fx: (215) 383-0082
                ddeluca@delucalevine.com

**Dated:** April 1, 2021